**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | | |
|---|---|---|---|
| **WMK, LLC d/b/a** | ) | | |
| **MOBILITYWORKS,** | ) | | |
| 4199 Kinross Lakes Pkwy, | ) | | |
| Ste 300 | ) | Case No. _____ | |
| Richfield, OH 44286 | ) | Judge _____ | |
| | ) | | |
| Plaintiff, | ) | **COMPLAINT** | |
| | ) | | |
| **v.** | ) | | |
| | ) | | |
| **KEOKI NISLEY,** | | | |
| 10914 Military Road SW, | | | |
| Lakewood, Washington | | | |
| 98498 | | | |
| Defendant. | | | |

Plaintiff WMK, LLC,  by and through its undersigned counsel, for its Complaint against Defendant alleges and avers as follows:

**NATURE OF THE CASE**

1.     In this action, Plaintiff WMK, LLC is asserting claims against a former employee, Defendant Keoki Nisley (hereinafter "Nisley") for breach of contract, violation of his non-competition and confidentiality agreements with Plaintiff, and  for fraud.

**THE PARTIES**

2.     Plaintiff WMK, LLC is an Ohio limited liability company with its principal place of business in Richfield, Ohio.  WMK conducts business under the name MobilityWorks through which it sells and services vehicles specially adapted to assist disabled persons with their

1

transportation needs and to help them achieve greater independence in their lives.  WMK will hereinafter be referred to as "MobilityWorks" or "the Company."

3. Defendant Nisley is an individual and a citizen of the State of Washington, residing at 10914 Military Road SW, Lakewood, Washington 98498.  From December 4, 2023 to December 4, 2025, Nisley was employed by MobilityWorks as the General manager of its store located in Tacoma, Washington.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1332, as it is between citizens of different states and the amount in controversy exceeds $75,000.00.

5. Defendant Nisley has expressly consented to this Court's exercise of personal jurisdiction over him in written agreements executed in connection with his employment. See attached Exhibits A (Non-competition Agreement) and B (Confidentiality and Non-Disclosure Agreement).  Defendant has also consented to venue in this Court.  *Id*.

## STATEMENT OF THE CASE

6. MobilityWorks owns and operates over 90 dealer locations from which it sells wheelchair accessible vans to assist its clients with mobility.  MobilityWorks was founded in 1997 and has become one of the leading dealers of wheelchair vans in the United States, maintaining the largest on-site inventory of wheelchair vans in the country.

7. As part of its business model, MobilityWorks works with clients to select a van that addresses their mobility needs and to provide orientation to the vehicle and its equipment.  If the

client wishes to trade a vehicle – whether wheelchair accessible or not – the Company has a trade program administered at the store level under the direction of the General Manager.

8.     MobilityWorks sells both new and used wheelchair accessible vehicles through its stores.  Much of its used vehicle inventory is acquired through trade-ins.  Trade vehicles that are not wheelchair accessible are sold by the Company in the wholesale marketplace.

9.     Defendant Nisley was hired as General Manager of the newly established MobilityWorks store in Tacoma, Washington on December 4, 2023.  As General Manager, it was Nisley's responsibility to approve the allowed trade-in value of a customer's existing vehicle when traded for a MobilityWorks wheelchair accessible vehicle.  Nisley was also a salesperson at the store, responsible for negotiating the terms of the sale and the trade.

10.    At the time of his hiring, Nisley signed a "Non-Competition Agreement" (attached as Exhibit A) and a "Confidentiality and Non-Disclosure Agreement" (attached as Exhibit B).

11.    Pursuant to the Non-Competition Agreement signed by Nisley, he agreed, among other things, that during his employment and for twelve months thereafter, he would not engage in any business "selling or servicing wheelchair accessible vehicles" within a defined restricted area, which included Tacoma, Washington.  Exhibit A at ¶ 2.

12.    Nisley further agreed, in the Non-Competition Agreement, that he would not, while employed by MobilityWorks and for 12 months thereafter, among other things solicit, attempt to sell to, or sell to customers or prospective customers of the Company, as described in the Agreement.  Exhibit A at ¶¶ 4 and 2(b).

13.    Pursuant to the Confidentiality and Non-Disclosure Agreement, Nisley agreed to keep confidential all non-public commercial, proprietary and trade secret information of

MobiltyWorks that he obtained during his employment, and to return to the Company at the termination of his employment all "tangible materials, equipment, documents, copies of documents, data compilations (in whatever form), software programs, and electronically created or stored materials that Employee receives or makes in the course of employment," along with any confidential or trade secret information in his possession. Exhibit B at ¶¶ 2(a) and(f) and 3.

14. Nisley further agreed, in the Confidentiality and Non-Disclosure Agreement, that in the event of a material breach of paragraphs 2 or 3 of that Agreement, MobilityWorks would have no adequate remedy at law and would be entitled to obtain equitable relief, whether by injunction or otherwise, in addition to remedies at law. Exhibit B at ¶ 8(b).

15. In both the Non-Competition Agreement and the Confidentiality and Non-Disclosure Agreement, Nisley agreed that the Agreements would be governed by, and construed in accordance with, the laws of the State of Ohio and that this Court and Ohio state courts would be "the only appropriate venues in any action, suit or proceeding against Nisley based on or arising out of" the Agreements. Nisley further consented to service of process in any such proceeding, waived any other requirement with respect to personal jurisdiction, venue, or service of process. Finally, Nisley "expressly consent[ed] to exclusive personal jurisdiction over him[] in such court." Exhibit A at ¶ 14; Exhibit B at ¶ 12.

16. In the Non-Competition Agreement, Nisley agreed that, in the event MobilityWorks filed legal proceedings to enforce its rights under the Agreement, the non-prevailing party would be liable for "all reasonable costs, expenses, and attorney's fees incurred by the prevailing party." Exhibit A at ¶ 8.

4

17.     Notwithstanding his agreement not to compete with MobilityWorks, during his employment as General Manager of the Company's Tacoma store, Nisley operated  competing businesses under the names PNW Mobility, All Auto Michaels, Keoki Motors LLC, and others (hereinafter collectively referred to as "Competing Companies").

18.     On numerous occasions, Nisley used his position and access as General Manager of the Tacoma store to identify and sell used vehicles, taken by MobilityWorks in trade, to one of the Competing Companies.  In most such cases, the trade-in value approved by Nisley as General Manager was more than the fair market value of the vehicle, and the sale price to the Competing Company was less than the allowed trade-in amount and the fair market value.

19.     .On at least one occasion, on behalf of PNW Mobility, Knisley sold a wheelchair accessible vehicle to a customer, delivering it at the MobilityWorks store and leading the customer to believe she was purchasing the vehicle from MobiltyWorks.  In fact, the vehicle had been taken in trade by MobilityWorks, purchased by a Competing Company at a price below the allowed trade value, and then sold by Nisley using his position, access and the facilities of MobilityWorks.

20.     On at least three other occasions, Nisley used a Competing Company to purchase a trade-in vehicle from MobilityWorks, at a price less that the approved trade value, and then sold it using MobilityWorks facilities to a MobilityWorks customer or potential customer.

21.     Nisley's scheme to overvalue trades and purchase them through his Competing Companies at a discount ultimately led to a loss of over Two Hundred Fifty Thousand Dollars ($250,000.00) to MobilityWorks.

22.     Nisley's employment was terminated by MobilityWorks on December 4, 2025.  At that time, he was instructed to return all company-owned equipment, records and other materials obtained in the course of his employment.  Nisley refused, and continues to refuse, to return a laptop computer issued to him by MobiltyWorks to facilitate his duties as an employee and he has converted that laptop computer, including MobilityWorks' confidential commercial information and business records to his own use, in violation of the Confidentiality and Non-Disclosure Agreement he signed.

### FIRST CLAIM FOR RELIEF
**(Breach of Contract – Damages)**

23.     Plaintiff incorporates herein the allegations contained in the foregoing paragraphs 1-22 as if fully set forth.

24.     Defendant Nisley has breached his agreements with MobilityWorks by operating a competing business while employed by the Company, by selling wheelchair accessible vehicles to MobilityWorks customers, by using confidential information to obtain beneficial terms for wholesale purchasers of trade vehicles in whom he had an ownership interest, and by failing and refusing to return company property containing confidential commercial information.

25.     As a result of Nisley's activities as described above, MobilityWorks has been damaged through the loss of sales and losses on wholesale dispositions of trade vehicles in an amount to be proved at trial, but not less than Two Hundred Fifty Thousand Dollars ($250,000.00).

**SECOND CLAIM FOR RELIEF**
**(Breach of Contract – Injunction)**

26.    Plaintiff incorporates herein the allegations contained in the foregoing paragraphs 1-25 as if fully set forth.

27.    In operating the Competing Companies, Nisley is not only violating his agreement not to compete with Plaintiff, but he is necessarily using confidential, proprietary and trade secret information he gained as a result of his employment with MobilityWorks.

28.    Moreover, in refusing to return his laptop computer, Nisley has retained access to confidential and proprietary information of MobilityWorks.

29.    Nisley agreed that a violation of his undertakings to safeguard the confidentiality of information he obtained during his employment would cause injury to MobilityWorks for which it has no adequate remedy at law and that injunctive relief would be appropriate.  Additionally, Nisley's continued violation of his undertaking not to compete with MobilityWorks has caused and will continue to cause the Company irreparable harm for which it has no adequate remedy at law.

30.    MobilityWorks is likely to prevail on the merits of its claims against Nisley.

31.    The public interest would be best served by the issuance of an injunction against Nisley preventing him from further competition with MobilityWorks and use of commercial and proprietary information gained from his employment with the Company, as well as requiring his immediate return of all equipment, materials and information belonging to the company that he has wrongfully retained.

### THIRD CLAIM FOR RELIEF
### (FRAUD)

32.    Plaintiff incorporates herein the allegations contained in the foregoing paragraphs 1-31 as if fully set forth.

33.    While employed as General Manager of MobilityWorks' Tacoma store, Nisley carried out a scheme to defraud MobilityWorks of thousands of dollars, which he converted to his own benefit.

34.    Specifically, Nisley systematically used his position to set unreasonably high trade-in values for vehicles taken in trade by MobilityWorks in connection with the sale of wheelchair accessible vehicles.  As General Manager, it was Nisley who set and//or approved the trade values, which were supposed to approximate the fair market value of the trade vehicle as established by independent valuation databases.

35.    Instead, Nisley assigned higher than fair market value to certain trades, which he then caused to be sold to his Competing Companies, at less than fair market (and the allowed trade-in) value.  Those Companies, in turn, sold the vehicles to third parties, in at least four cases to MobilityWorks customers or potential customers.

36.    In selling wheelchair accessible vehicles in competition with MobilityWorks, Nisley used MobilityWorks' property, including its store premises, sales and promotion materials, and service facilities without disclosing to the Company that he was acting on behalf of another company that he owned and operated.

37.    Nisley further represented that the trade-in values were reasonably set in reference to fair market value comparisons, and that the wholesale transactions were at arm's length.

38.    In using the Competing Companies to purchase vehicles that MobiltyWorks had taken in trade from its customers, Nisley willfully failed to disclose his ownership interest in the Competing Companies or that he was selling the vehicle to that company for less than the value MobilityWorks had given for it in the trade.

39.    MobilityWorks reasonably relied on Nisley's misrepresentations or failures to disclose as described above to its detriment in consummating or facilitating transactions involving Nisley's Competing Companies, all to MobilityWorks' detriment, sustaining damages in an amount to be proved at trial, but not less than Two Hundred Fifty Thousand Dollars ($250,000.00).

**WHEREFORE,** Plaintiff MobilityWorks demands judgment on its Complaint  against Defendant Nisley as follows:

1.  On its First Claim for Relief, judgment in an amount to be proved at trial, but not less than Two Hundred Fifty Thousand Dollars ($250,000.00);

2.  On its Second Claim for Relief, an injunction restraining Nisley from further competing with Plaintiff and from using its confidential and proprietary information, and to return all MobilityWorks equipment and information in his possession;

3.  On its Third Claim for Relief,  judgment in an amount to be proved at trial, but not less than Two Hundred Fifty Thousand Dollars ($250,000.00), plus punitive damages in an amount to be determined;

4.  Attorneys' fees incurred in pursuing this action;

5.  Costs and expenses incurred in pursuing this action; and

6.   Such other and further relief as the Court deems just.

May __, 2026

Respectfully submitted,

  /s/ Fordham E. Huffman
Fordham E. Huffman (OH 0020870)
FISHERBROYLES LLP
30628 Detroit Road, # 269
Westlake, OH 44145
(614) 371-8085
fordham.huffman@fisherbroyles.com

Trial Attorney for Plaintiff
WMK, LLC

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

  /s/ Fordham E. Huffman
Fordham E. Huffman
